MARY HEMENWAY CALLAN *vs.* JOHN J. CALLAN.

Norfolk.    February 2, 1932. — June 29, 1932.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, FIELD, & DONAHUE, JJ.

*Probate Court,* Findings by judge, Appeal, Divorce proceedings.    *Marriage and Divorce.*

On an appeal from a decree *nisi* of divorce entered in a probate court, where the evidence at the hearing was taken by a stenographer under G. L. c. 215, § 18, as amended, and the judge of probate made a report of material facts, questions of fact as well as of law are brought before this court, whose duty is to examine the evidence and decide the case according to its judgment, giving due weight to the finding of the judge of probate; but, where there was oral evidence at the hearing, the credibility of the witnesses and the relative weight of their testimony were for the determination of the judge of probate, and his findings based largely on such evidence will not be reversed unless plainly wrong.

Upon an appeal from a decree *nisi* of divorce entered in a probate court on the grounds of gross and confirmed habits of intoxication caused by the voluntary and excessive use of intoxicating liquors and of cruel and abusive treatment, where the evidence was reported under G. L. c. 215, § 18, as amended, it was *held,* that

(1) The judge was not plainly wrong in a finding sustaining the charge of gross and confirmed habits of intoxication, it appearing that the fact of voluntary use of intoxicating liquor by the libellee over a period of years was not controverted, and a finding of numerous instances of excessive use of such liquor by the libellee from May, 1926, to a month before the filing of the libel in October, 1930, being warranted by the evidence;

(2) The judge of probate was warranted in accepting as true testimony of the libellant although it was uncorroborated and was contradicted;

(3) Although there was no evidence that the libellee was intoxicated within the month preceding the filing of the libel, and some evidence that he was not, it was a reasonable inference from all the evidence that the libellee's habits prior to that month continued to the date of the filing of the libel;

(4) The libellee was not entitled as of right, upon sundry requests for rulings, to have the judge of probate state in other general terms the meaning of the statutory words, "gross and confirmed habits of intoxication";

(5) A conclusion that the libellee had been guilty of cruel and abusive treatment of the libellant was not plainly wrong, being based

on findings, warranted by the evidence, of instances of cruelty covering a period from May, 1929, to four days before the filing of the libel in October, 1930, including an instance in June, 1930, when the libellee struck the libellant with his fist twice; seized her by the throat and forced her into a chair, cutting her lip and bruising her jaw and arm; and on findings that four days before the filing of the libel she finally left the home in which they had been living, and that "in view of the abuses perpetrated on the libellant by the libellee . . . she has reasonable cause for fear and apprehension of bodily harm, and . . . was justified in leaving him for the protection of herself and her children";

(6) Evidence of intoxication with a malevolent purpose was material on the issue of cruel and abusive treatment;

(7) Although the judge of probate made no specific findings on an issue of condonation raised by the answer of the libellee, his general findings imported that he found that the libellee's cruel and abusive treatment of the libellant was not condoned;

(8) Even if the marital offences previous to four days before the filing of the libel were found to have been condoned, his conduct on that day, resulting in her justifiably leaving their home, warranted a finding of a breach of the condition of the condonation, annulling it;

(9) The decree *nisi* was entered rightly on both grounds.

LIBEL for divorce, filed in the Probate Court for the county of Norfolk on October 20, 1930, and described in the opinion.

The libel was heard by *McCoole*, J., a stenographer having been appointed under G. L. c. 215, § 18, as amended.

The judge's finding as to the occurrence on June 4, 1930, referred to in the opinion, was as follows: The libellee "approached the libellant with his fist clenched and his jaw set, and struck her full in the face. The libellant ran from him, and retreated toward the large chair. A table was knocked over, and the libellee grabbed the libellant by the throat, and pushed her down into the chair. During this altercation he struck the libellant with his fist twice more. He then left the room, went upstairs, and the libellant ran out of the house. . . . The libellant was injured by this altercation, having a cut on her lip, and a bruise on her jaw, and also bruises on her arm."

Other material facts found by the judge are stated in the opinion. By his order a decree *nisi* on both grounds charged was entered. The libellee appealed.

The case was argued on February 2, 1932, before *Rugg*, C.J., *Wait, Sanderson, & Field*, JJ., and after the death of

*Sanderson,* J., was submitted on briefs to all the Justices then composing the court.

*G. Alpert,* for the libellee.

*E. F. McClennen,* for the libellant.

FIELD, J. The libellant on October 20, 1930, filed in the Probate Court a libel for divorce on the ground of cruel and abusive treatment. The libel was amended later by adding a charge of gross and confirmed habits of intoxication caused by the voluntary and excessive use of intoxicating liquor. G. L. c. 208, § 1. A decree *nisi* granting divorce on both grounds was entered and the libellee appealed. A report of material facts was made by the judge. The evidence is reported.

On a probate appeal of this nature, as in equity, "questions of fact as well as of law are brought before this court, whose duty is to examine the evidence and decide the case according to its judgment, giving due weight to the finding of the trial judge" (*Hersey* v. *Hersey,* 271 Mass. 545, 554), but where there is oral evidence the credibility of the witnesses and the relative weight of their testimony are for the determination of the trial judge, and his findings based largely on such evidence will not be reversed unless plainly wrong. *Drew* v. *Drew,* 250 Mass. 41, 44. *Preston* v. *Peck,* 279 Mass. 16, 18–19.

The libellee contends, in substance, that the judge was plainly wrong in finding him guilty of gross and confirmed habits of intoxication caused by the voluntary and excessive use of intoxicating liquor, and of cruel and abusive treatment of the libellant. In addition to these general contentions he contends specifically that if the libellee ever had gross and confirmed habits of intoxication those habits did not continue until the libel was filed, that the judge was in error in denying certain of the libellee's requests for rulings of law bearing upon intoxication, that the judge improperly considered evidence of intoxication upon the charge of cruel and abusive treatment, and that if the libellee was guilty of cruel and abusive treatment of the libellant it was condoned by the libellant.

The parties were married February 24, 1924. The libel-

lant on October 16, 1930, left the home in which she had been living with the libellee and has not returned.

First. The judge was not plainly wrong in finding the libellee guilty of "gross and confirmed habits of intoxication caused by the voluntary use of intoxicating liquors." The evidence on this issue was contradictory. The affirmative evidence came largely from the libellant, though in some specific instances of intoxication her testimony was corroborated. The judge, however, could accept her uncorroborated and contradicted testimony as true. *Meader* v. *Meader*, 252 Mass. 132. Nor did her failure to note instances of his intoxication in her diary or to mention them to others, as the libellee contends, necessarily preclude belief in her testimony to his conduct. The voluntary use of intoxicating liquor by the libellee over a period of years is not controverted. There was evidence of, and the judge found, numerous instances, from May 2, 1926, to September 20, 1930, of excessive use of such liquors by the libellee, ranging in degree from those in which he was described as "not sober," through being "somewhat intoxicated," to being grossly "intoxicated." We are not called upon to define in terms of frequency and degree of intoxication the boundary between occasional intoxication and "gross and confirmed habits of intoxication." It has been said that these statutory words "probably do not admit of precise definition." *Blaney* v. *Blaney*, 126 Mass. 205, 206. The line must be drawn by a process of inclusion and exclusion, and its location, to a considerable extent, is a matter of fact. See *Dennis* v. *Dennis*, 68 Conn. 186, 192; *Northwestern Life Ins. Co.* v. *Muskegon Bank*, 122 U. S. 501, 505–506. It is sufficient to say here that the judge was not plainly wrong in finding on the evidence of the libellee's actual intoxication and the other evidence in the case, and reasonable inferences therefrom, that he had crossed this line. The judge could find that the libellee's voluntary and excessive use of intoxicating liquors resulted in gross and confirmed habits of intoxication.

The libellant was bound to prove that these habits of the libellee continued until the time of the filing of the libel.

*Hammond* v. *Hammond,* 240 Mass. 182, 184, and cases cited. There was no evidence that the libellee was intoxicated between September 20, 1930, and October 20, 1930, the date of the libel, and some evidence to the contrary. But it was a reasonable inference from all the evidence that the libellee's habits prior to September 20, 1930, continued during that period. *McCraw* v. *McCraw,* 171 Mass. 146. *Gowey* v. *Gowey,* 191 Mass. 72, 73.

The libellee contends that his requests for rulings bearing upon intoxication numbered 11, 12, and 13, were denied wrongly. We find no error in the denial of these requests. The eleventh request that "It is not drunkenness but habitual drunkenness that is made a ground for divorce by the statute," was dealt with adequately by stating the ground for divorce in the words of the statute. Moreover the judge ruled in compliance with other requests by the libellee that proof of fixed habits of intoxication was essential. By his twelfth and thirteenth requests the libellee in effect sought definitions of "gross and confirmed habits of intoxication," as the words are used in the statute. Though these words may be difficult of precise definition they are in common use. The libellee was not entitled as of right to have the judge state their meaning in other general terms. See *Commonwealth* v. *Buckley,* 200 Mass. 346, 352. Compare *Cobb* v. *Covenant Mutual Benefit Association,* 153 Mass. 176, 180. Hence we need not consider the accuracy of the proposed definitions.

Second. The judge was not plainly wrong in finding the libellee guilty of "cruel and abusive treatment" of the libellant. The evidence tending to support this finding covered the period from some time before May 26, 1929, to October 16, 1930, particularly an occurrence on June 4, 1930. As in the case of the other ground for divorce the evidence was conflicting and susceptible of different inferences. It could have been disbelieved. But there was evidence which, if believed, supported the specific findings, which need not be recited, of personal violence of the libellee toward the libellant — an instance on June 4, 1930, resulting in some bodily harm to her — and threats by him of

personal violence to her and other abusive words. The evidence warranted the judge's finding that on October 16, 1930, the day the libellant left the home in which she had been living with the libellee, he used abusive language and threatened to "thrash" her and to "throttle" her. On her direct testimony and reasonable inferences from the evidence of the conduct of the parties, the conclusion was warranted that she had reasonable apprehension of personal violence if they continued to live together. The findings of the judge that the libellant "in fear of the libellee" left the home in which they had been living, and that "in view of the abuses perpetrated on the libellant by the libellee . . . she has reasonable cause for fear and apprehension of bodily harm, and · . . . was justified in leaving him for the protection of herself and her children" were not plainly wrong. The judge's findings bring the libellee's conduct within the meaning of "cruel and abusive treatment" as those words have been construed. See *Bailey* v. *Bailey*, 97 Mass. 373, 380–381; *Freeman* v. *Freeman*, 238 Mass. 150, 159–160; *Curtiss* v. *Curtiss*, 243 Mass. 51, 53, and cases cited.

Evidence of intoxication of the libellee without malevolent purpose toward the libellant, standing by itself, does not make out a case of cruel and abusive treatment. *Armstrong* v. *Armstrong*, 229 Mass. 592, 594. The judge so ruled in substance at the request of the libellee. But he ruled also that the evidence of the libellee's intoxication was material on the issue of cruel and abusive treatment, and found that there was some evidence of intoxication with a malevolent purpose. In view of the evidence of the libellant's expressed objection to the use of intoxicating liquors by the libellee and the evidence that in some instances, at least, personal violence to the libellant or conduct creating in her a reasonable apprehension thereof accompanied his intoxication, this finding was not unwarranted nor this ruling erroneous.

Condonation is an affirmative defence to be proved by the libellee. *Coan* v. *Coan*, 264 Mass. 291. The judge made no specific finding as to condonation, but his general findings import that he found that the libellee's cruel and

abusive treatment of the libellant was not condoned. The evidence did not require a different finding. This is true even if we assume, as we do not decide, that the evidence of the relations between the parties — especially the uncontradicted testimony of the libellant — required a finding that his marital offences prior to October 16, 1930, were condoned. Condonation of cruel and abusive treatment of a wife by a husband is conditional upon his treating her thereafter with conjugal kindness. *Steere* v. *Steere*, 265 Mass. 317. The libellee's conduct on October 16, 1930, above described, could be found to amount to a breach of this condition and to vitiate any prior condonation. *Robbins* v. *Robbins*, 100 Mass. 150. *Smith* v. *Smith*, 167 Mass. 87. *Jefferson* v. *Jefferson*, 168 Mass. 456. *Osborn* v. *Osborn*, 174 Mass. 399. *Hedden* v. *Hedden*, 277 Mass. 112.

The decree *nisi* on both grounds alleged in the libel was entered rightly on the facts found.

*Decree affirmed.*