MYER G. JASPER *vs.* IRENE JASPER
(and a companion case[1]).

Worcester.     September 26, 1955. — November 8, 1955.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Divorce,* Gross and confirmed habits of intoxication.  *Drug.   Husband and Wife,* Separate support.

Findings by a judge of probate merely that a wife, "being a sick woman over a period of years . . . has followed her doctors' orders during the course of treatment and has taken sedatives and barbiturates and may have to do so regularly for the remainder of her life," and that she had not acquired the drug habit by her voluntary use of drugs by taking them in such circumstances; "in fact . . . she has not acquired that habit," supported a decree dismissing a libel fbr divorce by her husband based on the provision of G. L. (Ter. Ed.) c. 208, § 1, for a divorce for "gross and confirmed habits of intoxication caused by the voluntary and excessive use of . . . drugs."   [226]

In a separate support proceeding by a wife, the facts relating to the husband's financial worth and the parties' status in life and mode of living revealed no reason for disturbing a decree ordering the husband to make certain payments for the support of the wife and of the parties' daughter, custody of whom was awarded to the wife.   [227]

LIBEL for divorce, filed in the Probate Court for the county of Worcester on April 23, 1954.

PETITION for separate support, filed in that court on April 9, 1954.

The cases were heard by *Wahlstrom,* J.

---

[1] The companion case is by Irene Jasper against Myer G. Jasper.

*Charles W. Proctor,* for Myer G. Jasper.

*Harold H. Hartwell,* for Irene Jasper.

RONAN, J.  The first case is an appeal by the husband libellant from a decree dismissing a libel for divorce alleging that the libellee was guilty of gross and confirmed habits of intoxication caused by the voluntary and excessive use of intoxicating liquor and barbiturates.  The second case is an appeal by the husband from a final decree, entered upon a petition for separate support, ordering him to pay certain amounts to his wife.  Both cases were tried together, and the judge in each case made a report of the material facts.

## THE FIRST CASE.

The parties were married in 1934 and have two children, a boy born in 1941 and a girl born in 1938.  The wife had little or no responsibility in regard to running the household as the husband believed she was incompetent to do the ordinary things a wife should do and looked to a housekeeper rather than to his wife to maintain the home.  He lacked interest in and companionship for his wife, and from the very beginning of his married life he has been a domineering husband and came to be a domineering father.  This attitude has caused humiliation and embarrassment to her. The husband, a college graduate, has successfully conducted a textile business.  While he was generous in regard to the maintenance and support of his family, he neglected his family and more particularly his wife in that he paid more attention to his business.  He exercised full supervision over the children.  He decided what they should or should not do.  There was evidence that at times his wife became moody and unhappy because she yearned for attention and affection from her husband.  She frequently experienced crying spells by reason of his lack of attention.

There were many arguments between them over money on account of the niggardly attitude he exhibited in the several instances contained in the report which need not be repeated but which the judge found were a source of humiliation, irritation, and embarrassment to her.  He had a way

of displeasing his wife which had a very bad effect on her. While a patient at a hospital, she was allowed to use her automobile and on one occasion became involved in an accident. In order to humiliate her he falsely accused her of picking up men and boys.

Since her marriage she has been a patient in six hospitals and has been treated by nine physicians. In October, 1948, she was suffering from psychoneurosis, and the physician who then treated her and has continued to see her regularly was of the opinion that the husband's conduct was in great part the cause of her illness. Early in her married life the wife became nervous and ill and his conduct only served to make her melancholy, morose, and depressed. The parties separated in 1954 and there can be no improvement if they live together. The husband's conduct is the cause of the wife's condition.

As to the grounds alleged in the libel, the judge found that for a number of years, by the advice of her physicians, the wife used sedatives and barbiturates to relieve tension and for rest and sleep; that she drank liquor so infrequently that she could not possibly have acquired gross and confirmed habits of intoxication; and that, her use of sedatives and barbiturates being by prescription ordered by her doctors, she had not acquired the drug habit by her voluntary use of drugs. "In fact, I find that she has not acquired that habit but being a sick woman over a period of years, she has followed her doctors' orders during the course of treatment and has taken sedatives and barbiturates and may have to do so regularly for the remainder of her life." He ordered the libel dismissed.

The statute, G. L. (Ter. Ed.) c. 208, § 1, provides that a divorce "may be decreed for . . . gross and confirmed habits of intoxication caused by the voluntary and excessive use of intoxicating liquor, opium or other drugs . . . ." The inclusion of opium or other drugs was effected by St. 1889, c. 447, and was probably brought about by reason of decisions holding that intoxication caused by the consumption

of intoxicating liquors did not include intoxication from the use of opium or other drugs. *Barber* v. *Barber,* 14 Month. L. Rep. 375. *Rindlaub* v. *Rindlaub,* 19 N. D. 352.

The libellant does not now contend that the judge was plainly wrong in finding that the wife did not contract gross and confirmed habits of intoxication by the voluntary and excessive use of intoxicating liquor (see *Blaney* v. *Blaney,* 126 Mass. 205; *Callan* v. *Callan,* 280 Mass. 37), but he does contend that the judge was wrong in finding that she had not acquired the drug habit by her voluntary use of drugs because they were taken in accordance with prescriptions ordered by her physicians.

The judge found that, the libellee's use of sedatives and barbiturates being in accordance with the advice of her physicians, she had not acquired the drug habit by her voluntary use of drugs. That finding must be read with its context. Immediately following the finding just mentioned is the final conclusion that she had not in fact acquired the drug habit. That finding is definite and decisive. It is general and categorical. Whether she had or not was a question of fact with the burden of proof upon the libellant. That finding we construe to mean that in any event she had not contracted the habit. The mere use of drugs is not a ground of divorce but an abuse of them must be shown to entitle one to a divorce. *Burt* v. *Burt,* 168 Mass. 204, 208. There is nothing in the findings indicating any abuse. Furthermore, the judge made no finding that she ever became intoxicated by the use of drugs, and the absence of such a finding was the equivalent of the omission to find that she used them to excess because the use of the term "intoxication" in the statute, G. L. (Ter. Ed.) c. 208, § 1, is the method employed by the Legislature to describe a condition resulting from the excessive use of drugs. *Gowey* v. *Gowey,* 191 Mass. 72, 73.

The finding that she might have to take drugs during the remainder of her life does not show that she will ever become subject to a gross and confirmed habit of intoxication, much less that she had such a habit at the time the libel was filed.

*Hammond* v. *Hammond*, 240 Mass. 182, 184. *Callan* v. *Callan*, 280 Mass. 37, 40–41.

The decree dismissing the libel must be affirmed.

*So ordered.*

### THE SECOND CASE.

The report in this proceeding was similar to the one filed in the first case. The daughter attends a school in Weston. She returns weekends and spends much time with her mother with whom she desires to live. The son attends high school and intends to enter an academy and then go to college. The husband has been successful in conducting a textile concern from which he receives a salary. He also obtains rents from the company for use of real estate and for some of his machinery used by the company. He owns and operates a hotel in Gloucester. He also owns several cottages which he rents. He has a summer home. He has an interest in a package store in Worcester. He owns real estate in Boston and New York. His gross annual income exceeds $40,000. Within the last few years he paid a tax deficiency of $84,420 to the Federal government.

The final decree awarded custody of the daughter to the mother and the son to his father. It ordered the husband to pay $5,000 forthwith and the sum of $650 monthly for the support of his wife and daughter and ordered him in addition to pay for medical and dental bills that might be incurred by his wife and for the education and expenses of the children while they are away at school.

From the facts contained in the report of the material facts to which reference has already been made, the judge was right in making an award for the maintenance of the wife and the daughter of the parties. *Whitney* v. *Whitney*, 325 Mass. 28. *Heath* v. *Heath*, 325 Mass. 126. She was entitled to a fair and reasonable award considering her needs, his financial worth, their station in life, and their mode of living. *Coe* v. *Coe*, 313 Mass. 232. *Sack* v. *Sack*, 328 Mass. 600. *Wilson* v. *Wilson*, 329 Mass. 208. We see no reason to disturb the order. The decree must be affirmed.

*So ordered.*