436 So.2d 1366 (1983)
Robert A. LADNER
v.
Alice Dianne McKay LADNER.
No. 53565.
Supreme Court of Mississippi.
August 24, 1983.
*1368 Edward L. Cates, Jackson, for appellant.
Tighe & Tighe, B. Stirling Tighe, Jackson, for appellee.
Before PATTERSON, C.J., and ROY NOBLE LEE and PRATHER, JJ.
PRATHER, Justice, for the Court:
This action is a bill for divorce and related matters filed by Alice Ladner against her husband, Robert A. Ladner, and it is based on habitual and excessive use of drugs by her husband. Robert Ladner cross-filed against his wife for divorce, and for related matters, on the ground of habitual drunkenness. The First Judicial District of Hinds County Chancery Court granted Mrs. Ladner a divorce as well as her other requests, except attorney's fees. From such decree Mr. Ladner appeals to this Court on all affirmative relief granted his wife, and Mrs. Ladner cross-appeals regarding denial of her attorney's fees.
The assignments of error by Mr. Ladner raise the following issues:
(1) The chancery court improperly admitted evidence offered by the appellee which was not disclosed through discovery requests.
(2) The chancery court erred in admitting testimony from a pharmacist since such information was allegedly privileged.
(3) The chancery court improperly granted a divorce to appellee on the ground of habitual and excessive use of opium, morphine or other like drugs.
Mrs. Ladner assigns the denial of her attorney's fees and suit money as an abuse of discretion by the trial judge.

STATEMENT OF FACTS
Alice McKay Ladner and Robert A. Ladner were first married on October 7, 1961. They adopted one child, Robert McKay Ladner, who was fourteen years old at the time of this trial. Mr. and Mrs. Ladner were subsequently divorced in 1973. These parties remarried in 1974, and at that time Mrs. Ladner had been assured by her husband's doctor that Ladner was free of drugs and alcohol. About six weeks after the remarriage of the parties, Robert Ladner *1369 began suffering from severe depression. He was described as being incapable of driving, working, or functioning generally. Robert Ladner, assisted by his wife, sought and secured medication from several doctors for his condition. These medications included barbiturates and amphetamines among other drugs. Some of the other drugs noted were Dalmane, Libriam, Ativan, Nolundar, Mellaril, Sinequan, Vivactil, Talwin, and Tylenol No. 3 with Codeine, and were taken daily from 1974 to the time of separation in varying amounts. The testimony showed that Mr. Ladner was not truthful with his medical doctors concerning his frequency of use and dependency on these drugs. He exceeded the prescribed dosage.
The use of the drugs, although prescribed, affected Mr. Ladner's attitudes, actions, work habits, and family and social relationships. The work habits of Mr. Ladner became diminished with increased drug usage. He worked on an average of two days per week at his father's insurance business, his usual days being Monday and Tuesday from 8:00 a.m. to 10:30 a.m. and other short irregular times through the remainder of the week. However, Mr. Ladner claimed that he sold insurance by phone from his home on other business hours. His wife denied this and recounted his activities at home as being hyperactive in the morning after taking Ritalin, and as being "immobile and non-functioning after taking his tranquilizers at the latter part of the day." His non-business hours were spent at home in idleness or in agitation. Alice Ladner testified of efforts to help her husband and to allocate his drug dosage, but without success or help from her husband.
Social contacts with friends became nil. Only his family members came to visit the house. Additionally, Mr. Ladner thought people were following him. Household valuables disappeared from the household without explanation. The son's savings account was spent by Robert Ladner to pay bills. However, Mr. Ladner continued to receive an income in 1980 of approximately $23,000 from his father's business.
Mrs. Alice Ladner was the household manager. She performed most of the duties and responsibilities for the child and home. On occasion she had worked and earned $800 per month. However, she testified about a heart condition and of medical advice to terminate her work. She, nonetheless, did have a small "flea-market" business which she hoped would yield a future return. She testified of her husband being violent and abusive to her in the presence of their son.
The child, Robert, was nervous. He did not have friends to visit him at home and was inclined to psychologically based physical complaints.
Mrs. Ladner testified that because of her husband's excessive and habitual use of the drugs and of the effects of the drugs on him she was forced to separate on September 1, 1980, and file this divorce bill. She charged as grounds habitual and excessive use of opium, morphine, or other like drugs and drunkenness on drugs. She additionally requested alimony, child custody of the parties' fourteen year-old son, child support, exclusive use of the home with all the personal property, life and medical insurance for herself and the child, and attorney's fees. Robert Ladner filed a cross-bill seeking a divorce on the ground of habitual drunkenness, together with a prayer for child custody and use of the home of the parties.
After extensive pleadings, discovery and testimony, the chancery court entered an order granting Mrs. Ladner a divorce, custody of the minor child, and exclusive use of the home of the parties for herself and the child with its furnishings, except personal items of Mr. Ladner. Mr. Ladner was made responsible for both indebtednesses against the home. Child support of $200 and alimony of $200 monthly was ordered to be paid by Robert Ladner. The life and medical insurance of Ladner was ordered to be kept in full force and effect for the benefit of the child. Each party was held responsible for their own attorney's fees.

LAW

I.
The first issue to be resolved is whether the chancellor improperly admitted evidence *1370 offered by the appellee which was not disclosed to the appellant pursuant to discovery requests. Specifically, the appellant objected to Mrs. Ladner's testimony concerning the list of drugs used by Mr. Ladner, and to testimony from Mrs. Norma Roach and Dr. Bruce Parks. We shall address each of these contentions separately.

A.
The basis of the objection to Mrs. Ladner's description of the drugs resulted from her failure to list the names of each individual medication during a pretrial deposition. After appellant's attorney stated his objection, Mrs. Ladner's attorney read parts of that deposition into the record. The record stated:
Question: [by defense counsel] All right, now you say you've seen him take drugs. What drugs has he taken, Mrs. Ladner?
Answer: I really can't remember.
Question: All right, now, who can remember?
Answer: It was an assortment of tranquilizers, Ritalin. Several years ago I stopped dispensing Robert's pills. I don't do that anymore. I think he's a grown man and he can take care of his own medication.
Question: You really didn't answer my question so I am going to repeat it. Who has seen him take morphine and who has seen him take opium if you have not?
Answer: I couldn't say.
Question: All right, who has seen him take morphine if you have not?
Answer: There again I don't know.
Question: All right, who has seen him take drugs if you cannot tell us what drugs they are?
Answer: I really don't know offhand.
Generally, "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ..." Miss. Code Ann. § 13-1-226(b)(1) (Supp. 1982). And, the deponent is under the further duty to supplement those responses when such responses become incomplete or inadequate. Miss. Code Ann. § 13-1-226(e) (Supp. 1982). Clearly Mrs. Ladner had the duty to supplement her deposition responses concerning the drugs used by her husband.
But, the question still remains as to what actions the chancellor should have taken, if any, upon learning that a discovery violation had occurred. If a party fails to obey a court order permitting discovery, the court may, in its discretion, refuse to allow the disobedient party to support her claims with the undisclosed evidence. Miss. Code Ann. § 13-1-237(b)(2)(B) (Supp. 1982). We also believe that sanctions may be imposed for the failure to supplement even without a prior court order. Although there is no statutory authority for imposing sanctions without an order, courts have "an inherent power to protect the integrity of their processes" where statutory law provides no adequate remedy. See 8 Wright & Miller, Federal Practice and Procedure: Civil § 2050 (1970).[1] Ordinarily, *1371 the discovering party would have no way of knowing that a response should have been supplemented until he finds out at trial. Thus, if this were the proper case, the trial judge would have been permitted to impose a sanction.
In our prior decisions, we have held that sanctions should be imposed where the disobedient party willfully neglected or declined to permit discovery, Harkins v. Paschall, 348 So.2d 1019 (Miss. 1977), or where undue advantage and surprise results, McDaniel v. Mississippi Power & Light Co., 407 So.2d 112 (Miss. 1981). We have also recognized, however, that the "lower court should be cautious in refusing to permit testimony ..." Clark v. Mississippi Power Co., 372 So.2d 1077, 1080 (Miss. 1979). In other words, penal sanctions are not to be imposed per se for every discovery violation, and a determination of whether to impose such a sanction is ordinarily vested in the sound discretion of the trial judge.
It is our view that the trial judge under the circumstances came very close to abusing his discretion when he allowed Mrs. Ladner to testify, over timely objection, to the specific drugs taken by Mr. Ladner. In the view we take of the case, however, such error, if any, is not grounds for reversal.
We have explained fully in Part III of this opinion the substantive standards applicable where one seeks a divorce on the grounds that his or her spouse has been guilty of "habitual and excessive use of opium, morphine or other like drugs". Miss. Code Ann. § 93-5-1(6) (1972). Suffice it to say that Mrs. Ladner was not required to prove the specific, technical drug titles. Without the disputed evidence, that which Mrs. Ladner did prove was more than sufficient to establish grounds for divorce. Stated another way, the disputed drug names constituted evidence at best cumulative of what Mrs. Ladner had already proved.
Based on our careful review of the record, we are confident that the disputed evidence played next to no part in convincing the trial judge to grant the divorce. On the facts of this case we can say that the error, if any, was harmless beyond a reasonable doubt. See Miss.Sup.Ct.Rule 11.

B.
The appellant's counsel also objected to any testimony from Mrs. Norma Roach because her name was not disclosed prior to trial. When this objection was made, appellee's counsel took his turn to read pertinent parts of the deposition into the record. The record stated:
Mr. Cates: [defense counsel] All right, what witnesses do you plan to call at this trial, Mrs. Ladner?
Answer: I haven't even given a thought about it.
Mr. Cates: That's a valid question for us and I will expect an answer within ten days so that I can .. .
Mr. Tighe [complainant's counsel] If we are able to furnish it within that time, we will certainly furnish it to you.
Section 13-1-226(b)(1) provides that parties may obtain discovery regarding "the identity and location of persons having knowledge of discoverable matter." This discovery provision was adopted from the federal rules of procedure counterpart, and there are several federal cases construing this provision. Fed.R.Civ.P. 26(b). Generally, it is settled law that a party can discover from his opponent the names of occurrence witnesses. Brennan v. Engineered Products, Inc., 506 F.2d 299 (8th Cir.1974); Wirtz v. Continental Finance & Loan Co. of West End, 326 F.2d 561 (5th Cir.1964). But, *1372 it is also generally held that a party is not entitled to find out, by discovery, the prospective witnesses his opponent plans to call at trial. Griffin v. Memphis Sales and Mfg. Co., 38 F.R.D. 54 (N.D.Miss. 1965); Padovani v. Bruchhausen, 293 F.2d 546 (2nd Cir.1961); Bell v. Swift & Co., 283 F.2d 407 (5th Cir.1960); 8 Wright & Miller, Federal Practice and Procedure: Civil § 2013 (1970); but cf. U.S. Equal Employment Opportunity Commission v. Metropolitan Museum of Art, 80 F.R.D. 317 (D.C.N.Y. 1978).
There are both advantages and disadvantages in requiring a party to divulge a list of witnesses to be called at trial. See generally Commentary  Discovery of Names of Trial Witnesses, 21 F.R.Serv. 33.316 (1955). One factor in favor of requiring an attorney to produce an advance witness list is the reduction in cost of litigation by eliminating the opposing attorney's need to prepare for cross-examination or rebuttal of an occurrence witness who will not be used at trial.
There are also some valid arguments against such a requirement. See Fidelis Fisheries, Ltd. v. Thorden, 12 F.R.D. 179 (S.D.N.Y. 1952). First, if the attorney only provides a list of those witnesses he intends to call, and not a list of all occurrence witnesses, then it is entirely possible that the discovering party will not learn of the existence of other occurrence witnesses. This would obviously frustrate the basic purpose in having a discovery procedure. Second, it could conceivably place an attorney in the difficult position of explaining away the failure to call an announced witness if he later chose not to use such a witness. Finally, and perhaps most importantly, counsel should be granted sufficient time to plan his trial strategy without interference during the early discovery stages.
In balancing these factors, several courts wait until the pretrial conference before requiring the parties to disclose their trial plans. Wright and Miller, supra; 2A Barron & Holtzoff, Federal Practice and Procedure § 650.1 (1961). We believe that discovery is more beneficial when an attorney learns of all occurrence witnesses. If a list of prospective witnesses is desired by a party, he may secure such an order at a pretrial conference before trial, but not at the discovery stage. Thus, we hold that the appellant, during discovery, was entitled to a list of occurrence witnesses and not a list of trial witnesses.

C.
The appellant made the same objection with regard to the appellee's undisclosed expert witness, Dr. Bruce Parks. In resolving this issue, it should first be recognized that expert witnesses are treated differently than occurrence witnesses. Section 13-1-226(b)(4)(A) provides a special discovery procedure for expert witnesses. It states that "a party may through interrogatories require any other party to identity each person whom the other party expects to call as an expert witness at trial... ."[2] (emphasis added) Miss. Code Ann. § 13-1-226(b)(4)(A) (Supp. 1982). Then, the court may, upon motion, permit discovery by other means. Id.
The language of the statute could not be more clear. Such information must be sought initially by interrogatory rather than by deposition. This, the appellant failed to do when he requested the information during a deposition; and, we cannot permit him to complain of a nondisclosure which he could have obtained by using the proper procedure. Interrogatories are initially required in such cases because they are less expensive, and the statutory procedure should be strictly followed.

II.
In his next assignment of error, the appellant contends that the chancellor committed error when he allowed testimony from Mr. Ladner's pharmacist, W.C. Harris, Jr. The evidence introduced concerned the prescriptions that Harris filled for Ladner. Appellant's counsel objected to this testimony on the basis that such evidence was a *1373 privileged communication under section 13-1-21 of the Mississippi Code Annotated (1972) (current version in Supp. 1982).[3] That statute provides in pertinent part that:
All communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice are hereby declared to be privileged, and such physician or surgeon shall not be required to disclose the same in any legal proceeding except at the instance of the patient.... (Emphasis added).
In construing this statute, our Court stated in Gulf, Mobile & N.R. Co. v. Willis, 171 Miss. 732, 157 So. 899 (1934), sugg. of error overruled, 158 So. 551 (1935), that the statute must be limited to its express language and clear purpose since it has the effect of preventing facts from being disclosed which would often be material to the case. This Court has frequently employed such reasoning in denying the statute's application to professionals who are not physicians or surgeons. See, e.g. McCay v. Jones, 354 So.2d 1095 (Miss. 1978) (opinion reviewing previous cases construing the physician privilege statute); Gulf, supra (a dentist is not a physician within the intent and meaning of the physician privilege statute); Mississippi Power & Light Co. v. Jordan, 164 Miss. 174, 143 So. 483 (1932) (nurse, as independent person, receiving medical confidences as such, is not within the physician privilege, but nurse acting as physician's agent is within privilege); S.H. Kress & Co. v. Sharp, 156 Miss. 693, 126 So. 650 (1930) (chiropractors are not physicians and therefore are not within the privilege). We fail to see any substantial reason for requiring nondisclosure of communications between a pharmacist and his client where such communications contain material and relevant evidence. We hold that the privilege statute does not extend to pharmacist-client communications.

III.
The crucial issue to be resolved in this case is whether the chancery court properly granted Mrs. Ladner a divorce as a result of Mr. Ladner's use of drugs. In this state, an innocent spouse has the statutory right to acquire a divorce from a spouse who habitually and excessively uses opium, morphine or other like drugs.[4] Miss. Code Ann. § 93-5-1 (1972).
Section 1-3-65 of the Code provides that "all words and phrases contained in the statutes are used according to their common and ordinary acceptation and meaning... ." Miss. Code Ann. § 1-3-65 (1972). Our divorce statute uses the terms "habitual," "excessive," and "other like drugs." Each of these terms must now be defined.

A.
First, we think that the term "habitual" obviously requires more than an occasional indulgence in drugs. Nor do we believe, however, that the complainant should be required to prove that the guilty spouse uses drugs entirely or exclusively. Instead, the term "habitual" requires the complainant to show that the defendant customarily and frequently uses drugs. See Black's Law Dictionary 640 (5th ed. 1979).

B.
Two jurisdictions have considered the "excessive" requirement, either explicitly or *1374 implicitly, in divorce cases based on the use of drugs. The Supreme Judicial Court of Massachusetts held that the mere use of drugs was not a ground for divorce, but that an abuse of them must be shown. Jasper v. Jasper, 333 Mass. 223, 129 N.E.2d 887 (1955).[5] The Massachusetts court added that the fact that the defendant took drugs on the advice of her physician, and that such use would probably continue throughout her life, did not state a ground for divorce. In Rindlaub v. Rindlaub, 19 N.D. 352, 125 N.W. 479 (1910), a wife was denied a divorce even though her husband admittedly used morphine habitually. The morphine habit had been acquired through the long use of such drugs to alleviate pain caused by an incurable malady. The North Dakota court reasoned that if such a habit is reasonably and necessarily caused by conditions over which the victim has no control, it would be manifestly harsh to subject that party to the undeserved punishment of a divorce.
We think that the term "excessive" requires an abuse of drugs. In other words, the guilty spouse must be so addicted to the use of drugs that he cannot control his appetite for drugs whenever the opportunity to obtain drugs is present. However, we consider it a justifiable excuse for such behavior where, as in the Rindlaub case above, the defendant is prescribed such drugs by a physician for legitimate reasons.

C.
Finally, we must determine what is meant by the language "other like drug." The leading Mississippi treatise on the subject suggests:
Looking to the purpose to be served by the statute, namely the protection of the innocent spouse and the family, it would seem to be a logical and fair interpretation of the statute to say that it was intended to include all drugs then known, or thereafter discovered or concocted which produce substantially the same effect as opium and morphine, when used in excess. In other words, "other like drug" should be construed to mean "other like drug in effect." So far as the kind of drug is concerned, chemical content is not important, but effect caused by use is the test. The statute should be construed in such manner as will be for the protection of the innocent spouse, and if it be shown that by reason of the use of any habit forming drug or concoction, the defendant is rendered irresponsible or reckless, it is sufficient in so far as the kind of drug required by the state is concerned. (Emphasis added). [Bunkley and Morse's Amis on Divorce and Separation in Mississippi § 3.13 (1957)].
In the scant number of statutes and cases which have addressed this problem, effect caused by use of the drug seems to be the key.[6] For example, in North Dakota, an individual may obtain a divorce from another whose use of drugs either "disqualifies the person a great portion of the time from properly attending to business," or inflicts "a course of great mental anguish upon the innocent party." N.D. Cent. Code § 14-05-08 (Supp. 1981). In Rindlaub, supra, the Court noted that the defendant was an eye, ear and nose specialist who performed several successful surgeries on patients inspite of his morphine addiction. The court then ruled that the plaintiff had failed to prove that the defendant was incapacitated or disqualified from attending to business a great portion of the time.
We choose to construe the language "other like drug" as meaning "other like drug in effect." Consequently, lower courts must find such adverse effects as those which would result from the habitual *1375 and excessive use of morphine or opium. Obviously, such factors as the guilty spouse's inability to support his wife and family or to properly attend to business should be considered. Additionally, the guilty spouse's incapacity to perform other marital duties or his causing the marital relationship to be repugnant to the innocent spouse are equally important. None of these factors should be regarded as a necessary condition, however, before granting a divorce. Instead, they should be considered together with any other relevant circumstances.

D.
Perhaps, a summary is warranted. A complainant must prove (1) that the guilty spouse's use of drugs was habitual in that it was customarily and frequently indulged; (2) that the guilty spouse's drug use was so excessive that he did not have the ability to control his appetite for drugs; and, (3) that the drugs used were morphine or opium or comparable to morphine or opium in effect.
(1) Applying these tests to the factual situation of the case sub judice, the facts evidenced a daily use of drugs by Robert Ladner from 1976 to the time of separation in 1980. This testimony came from not only Ladner's wife, but was brought out by the pharmacist's records. The record substantiates an habitual routine and custom of drug usage.
(2) Ladner had lost control of his appetite for drugs as shown by his abuse of the prescribed dosage. At one time Ladner received prescriptions from more than one doctor to satisfy his needs, without one doctor knowing of the other's activities. The misrepresentations of usage and activities made by Ladner to his physicians further evidenced his loss of control to conclude excessive use.
(3) As to the type of drugs taken by Ladner, no testimony showed use of morphine or opium. The list of prescription drugs included: barbiturates, amphetamines, Dalmane, Libriam, Ativan, Nolundar, Mellaril, Sinequan, Vivactil, Talwin, and Tylenol No. 3 with Codeine.
The effect testified to by Ladner's family upon Mr. Ladner evidenced a physical effect upon him similar to morphine or opium. His actions evidenced extremes of hyperactivity or of stupidity, but not what is considered normal behavior. In addition to the physical effects on Ladner, other adverse effects occurred in his work habits and social and family relationships. Financial strain was felt within the family. These adverse effects are also those evidenced by families where narcotic drugs are used habitually and excessively. We, therefore, conclude that all three tests are met in this case; the defendant used habitually and excessively drugs comparable in effect to opium and morphine. The chancellor was correct in granting a divorce to Mrs. Ladner on the ground alleged.
Other errors assigned, relating to child custody, support, alimony, use of the home, and financial matters, were supported in the record by substantial proof. We hold that the chancellor did not abuse his discretion in these adjudications.
Regarding the denial of the divorce to the cross-complainant, Robert Ladner, the record is devoid of sufficient proof to sustain this request on the ground of Mrs. Ladner's habitual drunkenness. This also is affirmed.
The cross-appeal here presents the question of the denial of Mrs. Ladner's attorney's fees. This is discretionary with the chancellor. We find no abuse of his discretion. Therefore, we affirm his order and also deny the motion for attorney's fees to her on this appeal.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, DAN M. LEE and ROBERTSON, JJ., concur.
HAWKINS, J., dissents.
BOWLING, J., not participating.
HAWKINS, Justice, dissenting:
I respectfully dissent. The majority's holding relative to a party's inability to obtain prior to trial the names of the witnesses his adversary intends to call, in my *1376 view, violates the letter and spirit of the discovery statutes. The cases cited by the majority support an entirely separate and distinct discovery principle, and the majority opinion is unsound.
As the majority notes, defense counsel asked the plaintiff during a discovery deposition the names of the witnesses she planned to call at trial. She replied she had not given a thought to it, and defense counsel asked for an answer in ten days. Plaintiff's counsel responded that if they were able to furnish the answer within that time, he would certainly furnish it to the defendant.
No answer was forthcoming, and nine months later, during the course of the trial, Mrs. Norma Roach was tendered as a witness. Defense counsel objected, urging that her name had not been furnished at any time prior to trial. Plaintiff's counsel argued that in order for defendant to be entitled to the name of such witness, he should have made a motion to compel discovery. The chancellor ruled he had a wide discretion in the matter, and permitted the witness to testify.
The majority detects nothing amiss in the one hundred percent failure of plaintiff to enlighten the defendant of the name of a witness until the lady took her seat in the witness box. I do.
The majority holds that a party may not during discovery obtain from his adversary the names of witnesses to be adduced at trial. The majority does not enlighten us as to how a party may ever obtain such information prior to trial.[1]
That the names of witnesses who actually testify at a trial are discoverable at some time prior to trial should be one of the most fundamental principles of discovery. Without this, discovery is meaningless.
In this case, when the plaintiff was asked to name the witnesses she planned to call at trial, she replied she did not know. This is understandable. At that time the defendant may not have been entitled to require plaintiff to make such determination or answer the question. This is what the cases cited in the majority opinion are all about: a party seeking to compel his adversary  months or perhaps a year or more prior to trial  to name the witnesses he expects to call at the actual trial. Courts have generally held that a party cannot compel his adversary to name far in advance of trial who he plans to call as trial witnesses.[2]
*1377 This is not the issue in this case, however. In this case we are talking about obtaining upon request the name of a trial witness a sufficient length of time prior to actual trial in order to afford a party an opportunity to interview such witness, or at least know something about him, and not be caught by surprise.
The majority tells us he cannot get any such name, unless he requests a pre-trial conference, which the trial judge may or may not see fit to call, and which can be held as late as ten days prior to actual trial. Miss. Code Ann. § 11-1-6 (Supp. 1982).
In federal courts an additional pre-trial procedure prevails than in our state courts. In federal courts there is a mandatory pre-trial conference which usually takes place at least a month prior to actual trial, sometimes much longer. At this pre-trial conference, the parties are required to have prepared a proposed pre-trial order and in this order the names, addresses, and telephone numbers of all trial witnesses must be listed. In a United States district court a party knows as a matter of course that he is going to know at least a month prior to trial the names and addresses of all witnesses the opposing party will call at trial. The precise issue of this case, therefore, never arises in United States district courts. Any trial attorney knows of a certainty, however, that the name and address of a witness he calls at trial had better be listed on that pre-trial order.
We have no mandatory pre-trial conferences or pre-trial orders in our state procedure. Absent this, it would seem abundantly clear that a party is entitled to know the names of trial witnesses at some reasonable time prior to trial. A trial witness is manifestly a person "having knowledge of any discoverable matter." Miss. Code Ann. § 13-1-226(b)(1) (Supp. 1982). When a party is called upon either through an interrogatory or at a deposition to name the witnesses he proposes to use at trial, he may not know. Later, and at some time prior to trial, though, he does know. He then has a duty to supplement his previous response. Miss. Code Ann. § 13-1-226(e)(1) (Supp. 1982).
This is so fundamental, so basic to the purpose of pre-trial discovery, that I am at a loss to see how it can be denied. In my view, it is vain to extenuate this basic proposition.
William Howard Taft, when he was a state judge, observed that "witnesses do not belong to one party more than to another." Shaw v. Ohio Edison Co., 9 Ohio Dec. 809, 812 (1887). And, it has been recognized that "the broad purpose behind the deposition and discovery rules was to take the sporting element out of litigation." 4 J. Moore & J. Lucas, Moore's Federal Practice ¶ 26.57[4] at 26-212 (2d ed. 1983).
Following the adoption of discovery statutes, our decisions have not taken lightly the failure of a party to reveal discoverable matter, including names of witnesses. See Huff v. Polk, 408 So.2d 1368 (Miss. 1982); Clark v. Mississippi Power Co., 372 So.2d 1077 (Miss. 1979); Harkins v. Paschall, 348 So.2d 1019 (Miss. 1977); and especially Square D Co. v. Edwards, 419 So.2d 1327 (Miss. 1982).[3]Cf. McDaniel v. Mississippi Power & Light Co., 407 So.2d 112 (Miss. 1981).
*1378 The majority evades the sound lessons of these cases by the untenable argument that there was no obligation on the part of the plaintiff to ever name the witness until she sat in the witness chair.
In my view, the majority has committed a fundamental error in failing to hold there was a positive duty on the part of the plaintiff in this case to name the witnesses she proposed to call at some meaningful time prior to trial.
I cannot concur in this equivocation.[4]
The discovery statutes are plain; their purpose is plain. I do not care to participate in their being pared away piecemeal, either by ignoring them, or by hypertechnical construction, or for some reason which is psychological rather than legal.
No discovery statute or rule is more important than another. In my view the majority decision constitutes authority for the proposition that a discovery rule may or may not be applied at the pleasure of some judge.
I have voted for their enforcement. Under the authority of this case, I cannot in good conscience do so again. What farewell toast shall we propose to the short and not too happy life of the discovery statutes?
NOTES
[1] Since our discovery statute is in many respects identical to the comparable federal rule on sanctions for discovery violations, we would like to call attention to the analysis of this issue in the Wright & Miller text. It states:

There is some theoretical difficulty in divining the source of the power to impose these sanctions. Rule 37, the general rule on sanctions, has no application. Failure to supplement a response  or making an incorrect response in the first instance  is not one of the kinds of flagrant misconduct listed in Rule 37(d) for which the sanctions of that section are available. The sanctions of Rule 37(b) may be imposed only for violation of a court order under Rule 35 or Rule 37(a) requiring a party to provide or permit discovery. In the situation presently being considered there will have been no opportunity for such an order... .
In the absence of a rule speaking to the question, reliance must be on the inherent power of the court. There has been a reluctance to use inherent power as the basis for sanctions, and it would have been desirable to tie Rule 37 directly to the situation here being discussed, but since this was not done the courts must be held to have inherent power to protect the integrity of their processes by imposing sanctions for giving an incorrect response and for failing to supplement a response.
The court necessarily has wide discretion in these matters. Because it has power to impose a sanction does not mean that it is required to do so. In the most common situation, in which a party has not given the name of a person with knowledge of discoverable facts, the court should consider the explanation, if any, for the failure to name the witness, the importance of the testimony of the witness, the need for time to prepare to meet the testimony, and the possibility of a continuance. In the light of all these factors it may then determine to permit the witness to testify, or it may exclude the testimony, or it may grant a continuance so that the other side may take the deposition of the witness or otherwise prepare to meet the testimony. [Id.]
[2] The Mississippi Supreme Court recently considered the use of interrogatories to discover the identity of experts and the subject matter of their testimony in Square D Co. v. Edwards, 419 So.2d 1327 (Miss. 1982).
[3] The effective date of the amended statute was April 15, 1982. It has also been brought to our attention that a new amendment to the statute, to take effect on July 1, 1983, will extend application of the privileged communications statute to other health care providers, such as pharmacists. Act of March 9, 1983, 1983 Miss. Laws ch. 327.
[4] The use of drugs may constitute a ground for divorce under some circumstances in other states. See, e.g. Ala. Code § 30-2-1(a)(6) (1975) (addiction to habitual use of opium, morphine, cocaine or other like drug); Me. Rev. Stat. Ann. tit. 19, § 691(1)(E) (1964) (gross and confirmed habits of intoxication from use of liquor or drugs); Mass. Ann. Laws ch. 208, § 1 (Michie/Law Co-Op 1981) (gross and confirmed habits of intoxication caused by voluntary and excessive use of intoxicating liquor, opium, or other drugs); R.I. Gen. Laws § 15-5-2 (re-enactment of 1969) (habitual, excessive, and intemperate use of opium, morphine, or chloral); W. Va. Code § 48-2-4(a)(6) (Supp. 1982) (addiction to habitual use of any narcotic or dangerous drug).
[5] See also Burt v. Burt, 168 Mass. 204, 46 N.E. 622 (1897) (statute authorizes divorce for abuse of drugs; the use must be excessive and produce a certain result).
[6] The evil effects resulting from the continued and excessive use of opium or morphine are well known. They interfere as much, to say the least, with the happiness of married life, and produce other effects upon the marriage relation as deplorable, as those resulting from the excessive use of intoxicating liquors. Gowey v. Gowey, 191 Mass. 72, 77 N.E. 526 (1906) (defendant's appearance and conduct was attributed to addiction from excessive and continued use of opium).
[1] Well now, this statement may not be precisely accurate. How so? Ask the busy trial judge to hold a pre-trial conference. He responds: "Why do you need a pre-trial conference in this case?" To which there is the reply: "So you can order the other side to tell us the names of the witnesses they plan to call at trial, which they have failed and refused upon request to do."

Isn't this a marvelous conservation of judicial time and attention, as well as a saving of litigation expenses? Trial judges and lawyers will certainly be grateful for this. By this route, a party might get the names of witnesses ten days prior to trial. Miss. Code Ann. § 11-1-6 (Supp. 1982).
[2] For example, the banner case cited by the majority, Fidelis Fisheries, Ltd. v. Thorden, 12 F.R.D. 179 (S.D.N.Y. 1952), held that a party could not, far in advance of trial, compel his adversary to name the witnesses he proposed to call at trial. In that case, however, the court had a rule requiring a party to serve upon the other the names of witnesses he planned to call at trial. Further, in overruling the motion to compel, the court order provided that in the event the name of a trial witness was not on the list served, the name of any such witness to be called would be promptly furnished to the opposing party promptly after ascertainment. These two important safeguards are missing in Mississippi procedure.

Griffin v. Memphis Sales & Mfg. Co., 38 F.R.D. 54 (N.D.Miss. 1965), cited by the majority, likewise held that a party could not be compelled to state far in advance of trial the names of witnesses he expected to call at trial. That is all this case held.
Even here, however, federal courts are by no means in agreement. In U.S. Equal Employment Opportunity Commission v. Metropolitan Museum of Art, 80 F.R.D. 317 (S.D.N.Y. 1978), the district judge required disclosure of the names of trial witnesses. And, in Lewis v. J.P. Stevens & Co., Inc., 20 F.R.Serv.2d 1091 (D.S.C. 1975), the district judge stated:
The plaintiffs contend that they have not made a definite decision as to which witnesses will be called. This case was filed in 1972 and discovery has been in process since that time. The plaintiffs should know by now who will be called as a witness, and if they do not know, the answer to this interrogatory will assist them in the preparation of their case. (Id. at 1092) (emphasis added).
Finally, the following is stated in Moore's Federal Practice:
Since a party clearly can ascertain the names of all persons who might be witnesses, under the specific provision for discovery as to "the identity and location of persons having knowledge of any discoverable matter," no good reason is seen why he should not have the right to learn, at some reasonable time before trial, which of these persons will be witnesses. The adverse party need not be ineluctably bound to use all of the witnesses at the trial, nor precluded from using other witnesses if their existence or the relevance of their testimony is discovered at a later time, if notice is given or circumstances otherwise justify it. (4 J. Moore & J. Lucas, Moore's Federal Practice ¶ 26.57[4] at 26-213  26-214 (2d ed. 1983) (emphasis in original).
[3] In part I-A. of its opinion (dealing with the failure to provide a list of medication used by Mr. Ladner), the majority does pay lip service to the requirements of the discovery statutes. It should be noted, however, that in Square D even a good faith failure to respond to discovery matter was held by this Court to be ground for reversal.
[4] This Court has done the same thing in criminal cases. The criminal rules require parties upon request to disclose the names of witnesses they propose to offer at trial. Miss.R. Crim.P. Rule 4.06. See Spots v. State, 427 So.2d 127 (Miss. 1983), for an instance of this Court running down the hill on this proposition, and Box v. State, 437 So.2d 19 (Miss. 1983) where a few weeks later we ran right back up the hill.