## SMITHSTON *v.* SMITHSTON.

[74 South. 149, Division B.]

1. DIVORCE. *Review. Finding.*
    Where it does not appear that he was manifestly wrong, the finding of a chancellor on questions of fact will not be disturbed.

2. DIVORCE. *Grounds. Habitual use of drugs.*
    Where, at the time complainant separated from his wife, she was addicted to the habitual and excessive use of narcotics such as opium, morphine, etc., but at the time complainant filed his bill for divorce she had overcome such habit and regained her normal condition of mind and body. In such case a divorce should not have been granted, the cause of complaint not existing at the time the bill was filed nor the decree rendered, and the grounds for divorce not being for a moral crime nor the infliction of personal indignity.

APPEAL from the chancery court of Hinds county.
HON. O. B. TAYLOR, Chancellor.

Bill for divorce by W. W. Smithston against Meta W. Smithston, From a decree for complainant, but awarding defendant alimony, defendant appeals and complainant cross appeals.

The facts are fully stated in the opinion of the court.

*L. Brame,* for appellant.

*G. G. Lyell* and *Mayes, Wells, May & Sanders,* for appellee.

COOK, P. J., delivered the opinion of the court.

Appellee exhibited his bill of complaint in the chancery court of Hinds county against the appellant, his wife, seeking a divorce from the bonds of matrimony upon the alleged cause of "habitual and excessive use of opium, morphine, or other like drug." Appellant answered the bill of complaint, denying the allegations of the bill. The evidence introduced on behalf of the complainant supported the allegations of the bill that respondent, for eight years prior to the separation of complainant and respondent, which separation occurred August 3, 1914, was addicted to the habitual and excessive use of the drugs mentioned, and that in consequence it was impossible for the complainant and respondent to live together. On the other hand, the evidence produced by respondent in denial of the allegations of the bill went to show that she had never been an habitual and excessive user of the habit-forming drugs mentioned in complainant's bill. Viewing the case as one in which there is a conflict of evidence, the finding of facts by the chancellor will control this court in the application of the law. Upon final decree the court below granted the divorce, and also granted respondent alimony. Respondent appeals to this court from the decree dissolving the bonds of matrimony, and complainant from the decree granting alimony.

The chancellor, in his final decree—"finds as a fact that the cause of divorce alleged in the original bill existed in favor of complainant at the time of the separation of the parties August 3, 1914, but did not exist at the time suit was instituted December 22, 1914. But the court finds that complainant had reasonable time after the separation within which to file the bill, and it was filed within reasonable time."

It will be observed that the chancellor, in the decree, decided two facts, to wit: (1) The defendant was an habitual user of drugs on the date of the separation of the parties, (2) that she was not guilty on the date of the institution of the suit. After finding the facts the chancellor proceeded to announce the law controlling the facts. We are not required to review or comment upon the chancellor's finding of facts; for, as we have stated, the evidence was in direct conflict, and we are unable to say that he was manifestly wrong in his conclusions. So we have a record before us presenting, purely and simply, a question of law; the facts being ascertained.

Concretely stated, was the trial court empowered to grant the relief it did not grant, when it determined that the cause of complaint did not exist when the suit was filed for relief? Broadly speaking, it is quite sure that a cause of action may exist to-day and not exist to-morrow; the cause of action might exist when the suit was begun and lost before the day of judgment. To illustrate, a suit may be brought on a promisory note, due and unpaid, but before the trial the note has been paid, and therefore a judgment cannot be entered. A trustee in a deed of trust may have a right to institute replevin for personal property after condition of the deed is broken, but if he postpones his suit until the debt secured is paid, he loses his cause of action. Illustrations might be multiplied. The general rule is, and must be, that a cause of action must exist when the suit to enforce same is begun. If one of the parties to a marriage contract commits adultery, and the act is not condoned by the injured party, it is doubtless true that proof of repentance and promised reformation before suit for divorce is filed will not destroy the cause of action. It may be also true that habitual cruel and inhuman treatment, as a cause for divorce, is not satisfied by repentance. The first is a completed act—a fact established. The latter is a personal indignity that regrets and a promise of reform may not cure. In cases where desertion for stated periods

gives a cause of action, many courts have held that an offer to return will not take away the matured cause of action. In the present case, no moral crime is charged or proven, and no personal indignity has been inflicted upon the complainant. The story told by this record is a pathetic one. The defendant was a great sufferer for a long period, from no fault of her own, and, according to the evidence believed by the chancellor, she took drugs to palliate her physical pains to such an extent and period of time that she became an habitual and excessive user of these insidious drugs. Finally, the husband and wife separated, and then it was that defendant waged a brave fight, and before the bill was filed, she had succeeded in overcoming the enemy and was restored to normal health of body and mind.

Did the chancellor fall into an error when he construed the law to be that complainant was, under those circumstances, entitled to a decree severing the ties that bound him to his wife? The appellant's counsel answer this question in the affirmative and cite in support of their contention the following authorities, viz.: *McMahon,* 170 Ala, 238, 54 So. 165. We think the Alabama court states the appellant's side of this case more definitely and clearly, perhaps, than any other case called to our attention:

"Paragraph 6 of section 3793, which said section enumerates certain grounds for divorce says: 'For becoming addicted after marriage to habitual drunkenness.' This section does not, of course, mean that if a party becomes addicted to the habit after marriage, but overcomes same for a reasonable period before any steps were taken for a divorce, and no steps were taken to get a divorce until after the habit had been overcome, the once existence of the habit, which did not continue to exist at or near the time of filing of the bill, would be a ground for divorce. Here the parties were married twenty-three years before the bill was filed, and the respondent may have become addicted to the habit shortly after the marriage, yet may have overcome it for years before the bill was filed, and

the statute was not intended to apply to such a case. The habit must be fixed, and must continue until the suit is brought. *Gourlay* v. *Gourlay,* 16 R. I. 705, 19 Atl. 142; 9 Am. & Eng. Encyc. of Law, 814, and cases cited in notes 8 and 9.''

The supreme court of Massachusetts, in the case of *Burt* v. *Burt,* 168 Mass. 204, 46 N. E. 622, speaking of a case similar to the present case, under a statute making ''gross and confirmed drunkenness'' a cause for divorce, said, that ''gross and confirmed drunkenness'' is a condition, and before a divorce could be granted under this statute, the condition ''must exist when the libel is filed.'' it may be said that the facts of that case showed that the defendant still used drugs to a certain extent, but the court held that it was error to grant the relief because it was not shown that the use of the drug was excessive at the time the bill was filed.

The supreme court of Connecticut, in *Allen* v. *Allen,* 73 Conn. 54, 46 Atl. 242, 49 L. R. A. 142, 84 Am. St. Rep. 135, discussed the point here discussed in this fashion, viz.:

''This *status* can only be dissolved between living parties by the assent of the state, which is ordinarily indicated by the judgment of a competent court. When an attempt is made through the courts to undo a marriage the state becomes in a sense a party to the proceedings, not necessarily to oppose, but to make sure that the attempt will not prevail without sufficient and lawful cause shown by the real facts of the case, nor unless those conditions are found to exist at the time the decree is made upon which the state permits a divorce to be granted. The state has an interest in the maintenance of the marriage ties which neither the collusion nor the negligence of the parties can impair. . . . The state does not favor divorces and only permits a divorce to be granted when those conditions are found to exist in respect to one or the other of the married parties which seem to the legislature to make it probable that the interests of society will be

better served, and the parties will be happier, and so the better citizens, separate than if compelled to remain together.   The state allows divorces, not as a punishment to the offending party,  . . .  but because the state believes its own prosperity will thereby be promoted.' Obviously this condition must be found to exist at the very time when the divorce is granted, otherwise the divorce should be refused.''

The last-mentioned case goes further than any other authority consulted by us, but it gives cogent reasons for its view of the law. The rule announced by this case, that the court should never grant a decree dissolving a marriage contract for the reason that the state has an interest in the maintenance of the marriage ties, unless the cause exists when the decree is rendered, is logical, to say the least, for it is certainly true that the strength and prosperity of all states rests upon the family, and it is also true, that a divorce frequently divides the family concerned into hostile groups. The text-books and cyclopedias seem to concur in the correctness of the decision referred to, and no decision to the contrary has been brought to our notice. If the authorities cited by appellant are approved the chancellor was in error.

Let us see what appellee has offered to weaken or overthrow appellant's contention.  Appellee stresses the note of Judge FREEMAN to *Allen* v. *Allen,* a case decided by the supreme court of Connecticut, supra. The views of Judge FREEMAN always command the respect of the bench and bar, but it may be noted that Judge FREEMAN cites no authority to support appellee's view of the law.   The cases cited by Judge FREEMAN are cases of adultery or desertion.   For obvious reasons, we think that the complaining party would not, in such cases, be denied a divorce. The cause for divorce for desertion is complete when the desertion has embraced the period of time fixed by the statute, and, generally speaking, the complaining party may bring his action at any time within the statutes of limitation.   In adultery cases repentance will not wipe

out the offense condemned by the moral as well as the civil law, unless the injured party condones the crime. A careful reading of Judge FREEMAN's note shows that his main quarrel with the court in the case criticised was the apparent announcement by the court that trial courts have a discretion to deny a divorce. We see no reason to criticize Judge FREEMAN's reasoning along that line. The real reason, we think, for the denial of a divorce in such cases is based on public policy—the admitted interest of the state in matters of this nature.

Appellee cites *Acker* v. *Acker,* 22 App. D. C. 353, as an authority for his contention that complainant had a reasonable time within which to file his bill. We have considered the opinion in that case with due care, and we are unable to find anything in the opinion to sustain the view of appellee. The opinion, on the contrary, is more of an authority for appellant than it is for appellee.

Appellee also relies on *Benkert* v. *Benkert,* 32 Cal. 467. This case merely holds that desertion for the statutory period is a cause for divorce, and that repentance did not obliterate the offense, and that there was no condonation proven.

Appellee insists that *Carlin* v. *Carlin,* 65 Ill. App. 160, justifies the decree granting the divorce. The demurrer to the bill of complaint in that case was that the cause was barred by the statute of limitation of two years. The court merely held that the statute did not apply to divorce cases filed in the equity; that the complainant showed a reasonable excuse for not filing the bill earlier, and that no laches was shown. A mere reading of the bill of complaint in that case clearly demonstrates the correctness of the court's reasoning, and we approve it unreservedly.

We have examined *Moore* v. *Moore,* 41 Mo. App. 176, cited by appellee, and find nothing in that case to justify the decision in the present case.

We have carefully considered all of the authorities cited by appellee, and have reached the conclusion that no case has been found upholding the decree of the chancellor.

We have made an independent investigation of the interesting and important question, and our investigation, like that of counsel for appellee, has been barren of results. All of the cases upon the subject, wherein the precise question was involved, hold that a divorce should not be granted in cases where the conditions authorizing a divorce did not exist when the complaint was filed. There are cases, in abundance, holding that repentance will not excuse adultery, personal indignities and conditions matured and fixed by statutory enactment. Our statute does not authorize divorcement for the habitual and excessive use of narcotics for a fixed time. The statute merely gives to the injured party the right to a divorce when it can be shown that the conditions existed when the relief was sought.

When we come to consider this question, upon authority, we find all the law is against the decree of the chancellor. When we view this contest from a common-sense standpoint, and in the light of public policy, it seems to us that we must inevitably travel to the conclusion that the complainant was without a grievance when he filed his bill; that the respondent was, at that time, fully restored to her normal self, both mentally and physically; and, this being true, and the chancellor declared it to be a fact, why should the court sever the ties that bind this man and wife? The law says it must not be done, and we are unable to say that the law is wrong.

The judgment of the chancellor will be reversed on direct appeal and the bill dismissed and reversed and remanded on cross-appeal for further consideration in the light of this opinion.

*Reversed.*