LUCILE O'CONNOR, Appellee, v. EUGENE J. O'CONNOR, Appellant.

DIVORCE:  Habitual Drunkenness—Reformation as Defense.  Whether,
1  in an action for divorce on the ground of habitual drunkenness, full reformation is a defense, *quaere*,; but evidence reviewed, and held insufficient to show such reformation.

JUDGMENT:  Conclusiveness—Stranger to Judgment.  A judgment in
2  disbarment proceedings is not, in subsequent divorce proceedings, evidence of the truth of the findings made by the court in such disbarment proceedings.

*Appeal from Fayette District Court.*—H. E. TAYLOR, Judge.

APRIL 6, 1921.

ACTION for divorce. Decree for plaintiff, as prayed. Defendant appeals.—*Affirmed.*

*Senneff, Bliss, Witwer & Senneff,* for appellant.

*E. H. Estey,* for appellee.

PER CURIAM.—Plaintiff and defendant were married at Oelwein, June 9, 1907, and lived together continuously thereafter, except during two brief periods of separation, until October, 1916. The grounds alleged in plaintiff's petition are habitual drunkenness and cruel and inhuman treatment. Defendant offered no testimony contradicting that offered on behalf of plaintiff on the issue of habitual drunkenness. His sole defense to this allegation of the petition is that he has fully and permanently reformed, and is no longer addicted to the drink habit.

1. DIVORCE: habitual drunkenness: reformation as defense.

The defendant, at the time of the marriage, was a practicing lawyer in Oelwein, with apparently splendid prospects of future success. He was elected judge of the superior court of the city of Oelwein; but, during the greater part of the period covered between 1907 and 1916, he was addicted to the excessive use of intoxicating liquors. Upon one occasion, he pleaded guilty to the charge of bootlegging, and was sentenced, and served for a period in the county jail. He was, on different occasions, fined for drunkenness. Charges of immoral character and unprofessional conduct made against him resulted in his disbarment. The court in the disbarment proceedings found that he had been convicted of bootlegging; that he was an habitual drunkard; that, while acting as superior judge, he took certain personal effects from a party brought before him on a charge of drunkenness, which included a diamond ring, a stick pin, and a watch, which he retained and refused to turn over to the party entitled thereto; that he converted $700 allowed as alimony in a divorce suit to his own use, although he had previously been paid for his serv-

ices; that he had been guilty of other dishonest and several indecent acts.

No proof was offered upon the trial of this case as to the truth of these several matters, and, as we have repeatedly held, a judgment is not evidence of the truth of anything therein recited or adjudicated, except as between the parties. *Sawyer v. Kelly,* 148 Iowa 644; *Chadima v. Kovar,* 168 Iowa 385. The findings of the court cannot, therefore, be considered herein as proof of the truth of the matters found by the court, but they do establish the grounds upon which the court found that defendant's license to practice law in the state of Iowa should be and was canceled and revoked. The testimony relied upon to establish the defendant's reformation is that of himself, and a brief statement from the testimony of two other witnesses, upon cross-examination, to the effect that they had not seen the defendant intoxicated, or observed other evidence of his use of liquor, since he returned to Oelwein from Gary, Indiana, late in the fall of 1918.

*2. JUDGMENT: conclusiveness: stranger to judgment.*

At the time plaintiff left home, and sold the household goods, the defendant was confined in the county jail at West Union. Early in January, 1917, he went to Gary, Indiana, and did not return to Oelwein until in December, 1918. According to his testimony, he drank no liquor while in Indiana. He says that, on his way from Indiana to Oelwein, in 1918, he drank three glasses of beer in Chicago, but had totally abstained from the use of liquor since that time.

Although the number of adjudicated cases is comparatively small, with few exceptions the courts have held that reformation may be shown as a defense in an action for divorce upon the ground of habitual drunkenness. *Smithston v. Smithston,* 113 Miss. 146 (74 So. 149); *Meathe v. Meathe,* 83 Mich. 150 (47 N. W. 109); *Gourlay v. Gourlay,* 16 R. I. 705 (19 Atl. 142); *McMahon v. McMahon,* 170 Ala. 338 (54 So. 165); *Burt v. Burt,* 168 Mass. 204 (46 N. E. 622); *Reynolds v. Reynolds,* 44 Minn. 132 (46 N. W. 236); *Allen v. Allen,* 73 Conn. 54 (46 Atl. 242). The holding of the court in some of the cited cases appears to have been based upon a statute requiring proof of habitual drunkenness for a certain length of time, and reformation before the

time had expired was proven. A contrary rule prevails in Missouri. *Tarrant v. Tarrant,* 156 Mo. App. 725 (137 S. W. 56).

This question has not been passed upon in this state, and, as we are not convinced by the proof of defendant's reformation, we do not give further consideration to the legal point. No evidence was introduced by either side as to the habits of the defendant since he returned to Oelwein in December, 1918, except as previously stated, nor was his testimony as to his conduct while living in Indiana disputed by the testimony of other witnesses. Most of his time during the last year has been spent away from Oelwein, which has, however, been his headquarters for the business in which he is engaged. The only evidence as to his habits while absent from Oelwein is that of himself. He testified that, for a time after he went to Gary, he practiced law, but was compelled to abandon his profession at that place, because it became known that he had been disbarred, convicted of bootlegging, and that his wife had left him. For a time, he worked for a company engaged in the manufacture of munitions for the government, and later, for the American Sheet & Tin Mill Company. He further testified that he received a button awarded by this concern for 100 per cent efficiency. Later, he worked for the Standard Steel Ordnance Department of the government at Hammond, Indiana. During this time, he was twice in the hospital, each time on account of a nervous breakdown.

According to the testimony of the plaintiff, the defendant was frequently intoxicated, and when in that condition, often invited friends, who were also addicted to the drink habit, to his home, where a carousal followed. She also testifies that he was quarrelsome, and cursed and abused her, and that she was constantly shamed and humiliated by his habits and conduct while they lived together. Since their separation, the defendant has sought a reconciliation. Plaintiff has persistently refused to meet or talk with him. Some of the correspondence between them appears in the record. In one letter, he claimed to be making money, and intimated that he was willing to do something substantial for her, but she declined to consider a reconciliation. These letters also reveal that plaintiff has lost all affection and respect for him, and that she is unwilling to con-

done his past offenses; and, in view of his previous life and habits, we are not quite convinced by his testimony that his claimed reformation is more than temporary in character. Abstinence for a time from the use of intoxicating liquors does not alone establish the complete eradication of the old appetite therefor.

In answer to a question by her counsel as to what she knew or had heard of the defendant's being in a hospital in Indiana for several weeks, she testified that the only thing she ever heard about that matter was that his brother sent him there for treatment on account of intoxication, and that he was intoxicated, and lived that kind of a life in Gary. Counsel for defendant moved to strike this answer by the witness, on the ground that it was hearsay, and a mere voluntary statement. Conceding that the evidence was hearsay and inadmissible, nevertheless it was an insinuation reflecting gravely upon the conduct of the defendant at a time when he says, without other evidence to support it, that he was abstaining from the use of liquor. But for the fact that the brother referred to, as we understand the record, resided in Oelwein, and was not called as a witness to deny this insinuation, no significance would be given thereto. It cannot be given much weight; but, in view of his past record and the claim of complete reformation asserted by him, he should have introduced such testimony as was available to him for the purpose of establishing his good faith. If the defendant has, in fact, reformed, and is now cured of the drink habit, he is indeed to be commended, and may yet become a useful citizen; but the question we are called upon to decide is whether, conceding that reformation may, under our statute, be pleaded as a defense, is the evidence offered in this case for the purpose of establishing same of such a convincing character as to persuade the court that the defendant has, in good faith, worked a permanent reformation in his former habits and desires? Although elected by his citizens to the responsible office of judge of the superior court, he continued, during the period of his occupation of that office, to indulge in the excessive use of liquor. It appears to have undermined his health, and destroyed his powers, for the time at least, to resist the tendency to drink, although it re-

sulted in his confinement in the county jail, upon a confessed charge of bootlegging, and in his disbarment.

Plaintiff appears to be a woman of good character and considerable refinement, and she suffered great indignities and shame on account of the defendant's habits and insobriety. We are not persuaded that plaintiff should be denied a divorce from the defendant, under the facts shown in the record, upon the sole ground that the defendant has abandoned the use of intoxicating liquors, when proof of such abandonment rests substantially upon his testimony alone, and upon the fact that, for a few months before the trial, when occasionally seen in Oelwein by his former friends, he was sober, and gave no indications of the present use of liquor.

It is suggested that defendant was accustomed to drink before the marriage, and that this fact was known to plaintiff. She admitted that she knew he had drunk to some extent, and that he had been once intoxicated, but she further testified that he promised her that he would never drink again. This promise, according to her testimony, was broken within a few weeks after the marriage.

We have thus far given no consideration to the testimony offered for the purpose of establishing the allegations of cruel and inhuman treatment. As the decree below must, on the ground of habitual drunkenness, be affirmed in all respects, it is unnecessary to decide this issue. It is our conclusion, and we hold, that the decree of the court below must be, and it is,— *Affirmed.*