821 So.2d 142 (2002)
Elizabeth LAWSON, Appellant,
v.
Steven R. LAWSON, Appellee.
No. 2000-CA-01855-COA.
Court of Appeals of Mississippi.
June 25, 2002.
*143 Joseph R. Meadows, Gulfport, Attorney for Appellant.
J.D. Lee, Biloxi, Attorney for Appellee.
Before KING, P.J., BRIDGES, and CHANDLER, JJ.
KING, P.J., for the court.
¶ 1. This case is before this Court challenging the judgment of divorce in favor of Steven Lawson entered by the Chancery Court of Harrison County. Aggrieved, Elizabeth Lawson has perfected her appeal and raised the following issues for this Court's review which, we quote verbatim: "1) The chancery court erred in *144 granting Steve Lawson a divorce on the grounds of habitual and excessive drug use; 2) The chancery court erred in awarding Steve Lawson primary physical custody of Julia M. Lawson; and 3) The chancery court erred in its distribution of the marital assets and debts of the parties."

FACTS
¶ 2. Steve and Elizabeth Lawson were married on March 17, 1981, in Kansas. They moved to Harrison County in 1985, and separated there on December 31, 1999. The Lawsons have one child, Julia M. Lawson, born August 25, 1991.
¶ 3. On January 10, 2000, Mr. Lawson filed for divorce on the grounds of habitual cruel and inhuman treatment or, alternatively, irreconcilable differences. He requested possession of the marital domicile, child support, and a division of the marital assets and debts. On January 19, 2000, Mrs. Lawson filed her cross-complaint for separate maintenance. She requested custody of Julia, possession of the marital domicile, child support, separate maintenance, and payment of the marital bills and indebtedness.
¶ 4. On February 3, 2000, the chancery court granted temporary use of the marital domicile and temporary custody of Julia to Mr. Lawson. Mrs. Lawson was granted visitation rights and was enjoined from using drugs and alcohol.
¶ 5. On April 10, 2000, the chancery court granted leave to Mrs. Lawson to amend her cross-complaint to request a divorce on the grounds of habitual cruel and inhuman treatment, adultery or alternatively, irreconcilable differences.
¶ 6. On May 30, 2000, Mr. Lawson was allowed to amend his complaint to allege substance abuse and addiction by Mrs. Lawson.
¶ 7. The chancery court heard this matter on June 15 and 16, 2000 and July 19 and 20, 2000. On October 11, 2000, Mr. Lawson was granted a divorce on the grounds of habitual and excessive drug use. The parties were granted joint custody of the minor child, with primary physical custody given to Mr. Lawson. Mrs. Lawson was ordered to pay $136 monthly in child support and was ordered to retain health insurance for Julia. Each party was ordered to pay half of Julia's private school tuition. As to the division of marital property, Mr. Lawson was awarded exclusive use of the marital domicile valued at $43,500, a money market account valued at $13,020, a Toyota and an Isuzu automobile valued at $25,000 and $2500 respectively. Mrs. Lawson was awarded a certificate of deposit of $25,753, an IRA valued at $38,000, her 401K valued at $13,800, one-half of Mr. Lawson's retirement, and a Mitsubishi automobile valued at $8000. Additionally, Mrs. Lawson was ordered to pay marital debt of $16,340.

Resolution of Issues

I.

Whether the trial court erred in granting Mr. Lawson a divorce based on the grounds of habitual and excessive drug use.
¶ 8. Mrs. Lawson argues that the chancery court erred in granting Mr. Lawson a divorce based on the grounds of habitual and excessive drug use.[1] Mrs. Lawson asserts that Mr. Lawson's amended complaint, alleging "addiction, substance abuse," does not comply with the language of Section 93-5-1 of the Mississippi Code *145 Annotated and is therefore not a recognized ground for a divorce. Mrs. Lawson contends that should Mr. Lawson's amendment be considered appropriate, he failed to prove the necessary elements for a divorce based on habitual and excessive drug use.
¶ 9. The Mississippi Code Annotated Section 93-5-1(Rev.1994), provides twelve grounds for divorce. Habitual and excessive drug use is one of the twelve grounds for divorce pursuant to Section 93-5-1. One seeking a divorce on this basis must establish that the spouse's use of drugs (1) was habitual and frequent; (2) was excessive and uncontrollable; (3) and was of morphine, opium or drugs with the similar effect as morphine or opium. Ladner v. Ladner, 436 So.2d 1366, 1375 (Miss. 1983). The Ladner court observed that the term "habitual" meant more than mere occasional use and required a showing that the defendant customarily and frequently used drugs. Id. at 1373.
¶ 10. Excessive was defined as the abuse of drugs to the extent that "the guilty spouse must be so addicted to the use of drugs that he cannot control his appetite for drugs whenever the opportunity to obtain drugs is present." Id. at 1374. There is an exclusion from this definition where the drugs are properly and legitimately prescribed by a physician for legitimate reasons. Id.
¶ 11. The Ladner court explained the language "other like drug" to mean "other like drug in effect." The Lander court further clarified that "[s]o far as the kind of drug is concerned, chemical content is not important, but effect caused by use is the test." Id.
¶ 12. The record before the trial court indicated that Mrs. Lawson, first obtained prescription drugs to address legitimate medical problems. However, she eventually became addicted to these prescription drugs.
¶ 13. It appears that Mrs. Lawson obtained her drugs under two circumstances. The first appears to have been the possible over-prescription by medical personnel. The second was to simultaneously seeking treatment from multiple physicians, without sharing the fact that she was seeing and obtaining prescriptions from all of them. By so doing, the evidence indicated that Mrs. Lawson could obtain two to three prescriptions per week. Among the prescription drugs obtained by Mrs. Lawson were Darvocet-N, Lortab, Hydrocodone, and Tylenol/COD # 3, all of which are drugs which can be, and in the case of Mrs. Lawson were, abused.
¶ 14. The chancellor determined that the drug abuse undermined and negatively impacted the marital relationship and was therefore a proper ground for divorce. This determination enjoys substantial support in the record.
¶ 15. As to Mrs. Lawson's contention that the pleadings were fatally defective, this Court concludes that the issue of abuse of narcotic drugs producing effects similar to those produced by opium or morphine was fully tried by the parties without any objection from Mrs. Lawson as to any defect in the pleadings. Though it would certainly have been preferable in the name of precision for the amendment to the complaint to track the statutory language found in Section 93-5-1, we are satisfied that the issue was tried by implied consent within the meaning of Mississippi Rule of Civil Procedure 15(b). That rule permits the necessary amendment to the pleadings to occur even after judgment, and then goes even further to state that "failure so to amend does not affect the result of the trial of these issues." M.R.C.P. 15(b).

*146 II.

Whether the chancery court erred in granting primary physical custody of the minor child to Mr. Lawson.
¶ 16. Mrs. Lawson challenges the chancery court's decision to award primary physical custody of the minor child to Mr. Lawson. She argues that the chancery court failed to appropriately evaluate the evidence according to the factors set out in Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). Those factors are:
1. Age, health, sex of child.
2. Continuity of care prior to the separation.
3. Parenting skills and willingness and capacity to provide primary child care.
4. Employment or the parent and responsibilities of that employment.
5. Physical and mental health and age of the parents.
6. Emotional ties of the parent and the child.
7. Moral fitness of the parents.
8. The home, school, and community record of the child.
9. The preference of the child at the age sufficient by law, to express a preference.
10. Stability of home and employment of each parent.
11. Other factors relevant to the parent-child relationship.
Id.
¶ 17. In awarding joint custody of the minor child, the chancery court determined that both parents made positive contributions to the child's well-being. The chancery court noted both parents were active in her school, church, and social activities. The chancery court awarded paramount custody to Mr. Lawson. However, the chancellor noted that a consideration of Mrs. Lawson's history of drug use and depression indicated Mr. Lawson to be the more emotionally stable parent.
¶ 18. This Court follows a deferential standard in reviewing chancery court decisions in child custody cases. Caswell v. Caswell, 763 So.2d 890(¶ 5) (Miss.Ct. App.2000). This Court will only reverse a chancery court's decision if there is "an abuse of discretion or a manifestly wrong or clearly erroneous finding." Id. There is nothing in the record before this Court which suggests the chancellor's decision to have been manifestly wrong or an abuse of discretion. It was not in-appropriate for the chancery court to consider that Mrs. Lawson had only been in recovery for nine months, while her history of narcotics abuse spanned more than five years.
¶ 19. This Court finds no error in the decision to award joint custody to the Lawsons with paramount custody going to Mr. Lawson.

III.

Whether the chancery court erred in the distribution of the Lawsons' marital assets and debts.
¶ 20. In her final assignment of error, Mrs. Lawson argues that the chancery court's division of marital assets was inequitable. Mrs. Lawson states that the chancery court abused its discretion by penalizing her use of medication. Mrs. Lawson argues that Mr. Lawson wasted more than $50,000 in marital savings as compared to her use of marital finances for $3,000 worth of prescription drugs. She therefore reasons that she should have been awarded a greater share of the marital assets and should not bear the burden *147 of the credit card debt, medical insurance, or half of Julia's school tuition.
¶ 21. To aid the chancery court in the equitable distribution of marital assets, the Mississippi Supreme Court has identified the factors set out in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994).[2]
¶ 22. Each party worked throughout the marriage. The chancery court reviewed a 1998 tax return that showed a combine gross income of $65,000, $43,000 was attributable to Mr. Lawson, who was at the time working as a commercial diver. However, in 1999, Mr. Lawson's income dropped to $12,070. The chancery court noted that Mr. Lawson did not work for a year, and once he found employment, it was only part-time. The chancery court found that Mrs. Lawson had a gross monthly income of $1300 as a part-time corporate sales and marketing director in the hotel industry. Also, the chancery court determined that there did not exist any reason why Mr. Lawson could not take full-time land-based employment or that Mrs. Lawson could not become full-time at her position, both to increase each of their earning income.
¶ 23. The chancery court determined the marital assets and their value to be:

 1. Marital home $43,500.00
 2. Certificate of Deposit $25,753.00
 3. Money Market Account $13,020.00
 4. IRA Account $38,035.00
 5. Mrs. Lawson's 401K $13,623.73
 6. 1998 Toyota $25,000.00
 7. 1989 Isuzu $ 2,500.00
 8. 1995 Mitsubishi $ 8,000.00
 9. Gold and silver holdings undetermined value
10. Tools and lawn equipment undetermined value
11. Mr. Lawson's pension undetermined value

¶ 24. These assets had a value of $169,531, plus assets with an undetermined value. The chancery court allocated to Mr. Lawson the marital house ($43,500), 1998 Toyota ($25,000); 1989 Isuzu ($2500), the balance of the money market account ($13,020.60) valued at $84,020 and tools and lawn equipment of an undetermined value. Mr. Lawson's share of the marital assets totaled $84,020. Mrs. Lawson received the certificate of deposit ($25,753.00), IRA ($38,050), her 401K ($13,623.73), 1995 Mitsubishi ($8,000), totaling $85,426 along with half of Mr. Lawson's retirement and gold and silver holdings of an undetermined value. From the certificate of deposit Mrs. Lawson was ordered to pay credit card debts, attributable to household expenses, in the amount of *148 $16,340. The chancery court stated that an additional $3,460 attributable to prescription drugs was the personal debt of Mrs. Lawson.
¶ 25. A chancery court's equitable division of marital property will not be disturbed by this Court unless manifestly wrong, clearly erroneous or an erroneous legal standard was applied. Id. at 930. The record shows that the total marital property was valued at more than $168,000. From the record, Mrs. Lawson received the bulk of the marital property including those items of an undetermined value. She offers no plausible reason why an even larger portion of the marital assets should have been awarded to her.
¶ 26. Accordingly, this Court affirms the chancery court's distribution of the marital assets and debt.
¶ 27. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.
NOTES
[1] Divorces from the bonds of matrimony may be decreed to the injured party for any one or more of the following twelve causes, viz: ... Sixth. Habitual and excessive use of opium, morphine or other like drug. Miss.Code Ann. § 93-5-1.(Rev.1994).
[2] 1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:

a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal
consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.