## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01702-COA

**BRIAN S. BOOKER**                                                                 **APPELLANT**

**v.**

**AMY TURNER BOOKER**                                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/19/2014 |
| TRIAL JUDGE: | HON. WILLIAM R. BARNETT |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DANIEL DEWAYNE WARE |
| ATTORNEY FOR APPELLEE: | AMY TURNER BOOKER (PRO SE) |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | PETITION FOR DIVORCE DENIED |
| DISPOSITION: | AFFIRMED: 03/08/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE AND FAIR, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     This appeal considers the chancellor's dismissal of a complaint for divorce.  The chancellor determined that the husband failed to prove that he was entitled to a divorce on the ground of habitual and excessive drug use, under Mississippi Code Annotated section 93-5-1 (Rev. 2013).  We find no error and affirm.

FACTS

¶2.     Brian and Amy Booker were married in 2004 and lived with Amy's two children from a previous marriage in Jackson, Mississippi.  Brian was in the military and traveled extensively throughout the state.  When Brian was deployed overseas, Amy purchased a

home for the family in Seminary, Mississippi. When Brian returned, the family remained in Seminary, and he commuted to work over the next several years. In 2008, Amy left her job to stay home with the children.

¶3. In 2011, Amy had gastric-bypass surgery. Within the next year, she also had gallbladder surgery and multiple surgeries to remove kidney stones. Because the gastric bypass caused her to have problems eating, Amy had multiple surgeries to expand her esophagus. During this time, Brian claims that Amy became dependent on Lortab, a pain medication prescribed to her in liquid and pill form by her surgeons, general practitioner, and various emergency-room physicians.

¶4. In January 2014, Brian filed a complaint for divorce and cited Amy's habitual and excessive use of drugs as grounds for divorce under section 93-5-1. In response, Amy filed a counterclaim for a divorce on the ground of habitual cruel and inhuman treatment. After trial, the chancellor ruled that Brian had not met his burden of proof to establish that Amy's drug use was excessive. Instead, the chancellor found that Amy's drug use was based on valid prescriptions given by her doctors to treat her medical problems. The chancellor dismissed Brian's complaint for divorce, finding he had failed to prove grounds of divorce. Then, Amy voluntarily dismissed her counterclaim. Brian appeals the chancellor's dismissal of his complaint.

## STANDARD OF REVIEW

¶5. "In a divorce proceeding, the chancellor is the finder of fact, and the assessment of

witness credibility lies within his sole province." *Carambat v. Carambat*, 72 So. 3d 505, 510 (¶24) (Miss. 2011) (citing *Sproles v. Sproles*, 782 So. 2d 742, 746 (¶12) (Miss. 2001)). The chancellor's findings will not be disturbed "when supported by substantial evidence unless the chancellor's judgment was manifestly wrong [or] clearly erroneous[,] or an erroneous legal standard was applied." *Id.* at 510-11 (¶24).

ANALYSIS

¶6. To prove the ground of habitual and excessive use of opium, morphine, or other like drugs, the supreme court has held:

> A complainant must prove (1) that the guilty spouse's use of drugs was habitual in that it was customarily and frequently indulged; (2) that the guilty spouse's drug use was so excessive that [s]he did not have the ability to control h[er] appetite for drugs; and, (3) that the drugs used were morphine or opium or comparable . . . in effect.

*Ladner v. Ladner*, 436 So. 2d 1366, 1375 (Miss. 1983); *see also* Miss. Code Ann. § 93-5-1.

¶7. In *Ladner*, the court ruled that the "habitual" use of drugs "requires more than an occasional indulgence in drugs." *Ladner,* 436 So. 2d at 1373. Rather, "the complainant [must] show that the defendant customarily and frequently uses drugs." *Id.* The use of drugs must not only be "habitual" but also "excessive." *Id.* at 1374. This element "requires an abuse of drugs." *Id.* The supreme court has ruled:

> [T]he guilty spouse must be so addicted to the use of drugs that [s]he cannot control h[er] appetite for drugs whenever the opportunity to obtain drugs is present. However, we consider it a justifiable excuse for such behavior where . . . the defendant is prescribed such drugs by a physician for legitimate reasons.

3

*Id.*

¶8. The *Ladner* court explained the "excessive" element through analysis of *Rindlaub v. Rindlaub*, 125 N.W. 479 (N.D. 1910). There, a wife sought a divorce from her husband on the ground of his drug use. Though the husband's use was habitual, the court denied the divorce and found that because the drugs were taken to alleviate pain caused by health problems, "such a habit [was] reasonably and necessarily caused by conditions over which the victim had no control . . . ." *Ladner*, 436 So. 2d at 1374 (citing *Rindlaub*, 125 N.W. at 496).

¶9. Prescription-drug use was the issue in *Ladner*. "The testimony showed that Mr. Ladner was not truthful with his medical doctors concerning his frequency of use and dependency on these drugs. He exceeded the prescribed dosages." *Id.* at 1369. Ladner's pharmacist also testified about the prescriptions that he filled. *Id.* at 1373.

¶10. In *Lawson v. Lawson*, 821 So. 2d 142, 145 (¶14) (Miss. Ct. App. 2002), this Court affirmed a divorce on the ground of habitual and excessive use of drugs. The Court ruled that the chancellor's decision was based on evidence that the wife obtained drugs through "over-prescription by medical personnel" and by "simultaneously seeking treatment from multiple physicians, without sharing the fact that she was seeing and obtaining prescriptions from all of them." *Id*. at (¶13). Professor Deborah Bell in her treatise, cites *Lawson* for the proposition that "[h]abitual use of drugs as prescribed is not grounds for divorce even if the defendant becomes dependent on the drugs. But divorce may be granted when a spouse's

4

initial, legitimate use of prescription drugs becomes misuse." Deborah H. Bell, *Bell on Mississippi Family Law* § 4.02(7)(c) (2011). Thus, when we consider "excessive" we must include in the definition the "misuse" of prescription drugs.

¶11. Here, within this definition, Brian must prove that Amy's use of Lortab and similar pain medications was "excessive." The chancellor found that it was not. And the chancellor ruled that "[Brian's] proof showed without question that in every instance of her use of Lortab, the medication had been prescribed by a doctor for her very legitimate health problems."

¶12. Amy denied having an addiction to prescription drugs. She argued that her body, due to the gastric-bypass surgery, reacted differently to the pain medication. However, Brian and Amy's mother, Miki Turner, testified that Amy had a prescription-drug addiction. Yet Amy's father, Alvin Turner, and daughter, Whitney Steel, both testified that while the Lortab did cause Amy to have episodes of intoxication, they could not definitively say that she had an addiction to these drugs.

¶13. Brian, Miki, and Whitney all testified about various times during 2012 and 2013 when Amy would become impaired and have "episode[s]" of unconscious actions. Miki testified that during these years, Amy visited the emergency room fifty to seventy-five times for various medical problems and pain.

¶14. Brian also testified that the family had no credit-card debt, but in 2012 Amy charged $20,000 on the credit card. Brian testified that he did not know where the money was going.

5

Amy testified that she moved cash to their joint bank account to buy groceries and pay bills.

¶15.    All of the family members, except Amy, testified that in 2012 Amy's medications were locked in a closet and given to her only at the appropriate times. However, this arrangement did not last long. Amy found the key during the days that Brian was away for work and had access to her medications. Then, in July 2012, after either a drug overdose or a "seizure event," Amy voluntarily checked into Pine Grove Behavioral Health and Addiction Services for treatment. Amy left after only one night.

¶16.    In November 2012, Amy received a citation for driving under the influence. During the stop, Amy suffered a seizure and was taken to a hospital in Jackson. Amy did not remember this incident, and she did not remember many of the other episodes that her family members testified about.

¶17.    At trial, Amy claimed that she had not used Lortab for many months. She testified that her physicians had given her a plan for pain management that did not cause her to have episodes of impairment. None of Amy's doctors or pharmacists testified at trial. Although Brian offered some of Amy's pharmacy and medical records into evidence, neither the records nor the testimony established that Amy had been diagnosed with an addiction to prescription pain medications or indicated that Amy's drug use was excessive.

¶18.    Unlike *Ladner* and *Lawson*, the evidence here does not indicate that Amy was over-prescribed Lortab or any other pain medication. Also, while Amy sought treatment from multiple physicians, there was no evidence that she lied to her physicians about her drug use

6

to obtain additional drugs. The record simply does not compel a finding that Amy's use of prescription drugs was excessive in light of her serious health issues or that she misused the prescription drugs.

¶19. Therefore, we find that the chancellor's decision was supported by substantial evidence and was neither manifestly wrong nor clearly erroneous, and that the chancellor did not apply an erroneous legal standard. We find no merit to Brian's appeal and affirm the chancellor's dismissal of Brian's complaint for divorce.

¶20. **THE JUDGMENT OF THE COVINGTON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR. GREENLEE, J., NOT PARTICIPATING.**